case for today is case number 416-0491, and we are missing one of our panel members, Justice Kinect. He is unable to be here today. He will still participate in the resolution of these cases. He will listen to the recording of oral argument, and we will conference and resolve the matters, but he will not be here today. I'd ask that counsel step up and state your name. Good morning, Your Honor. Good morning. My name is Sharif Ramani from Austin State Appellate Defender, and I represent the defendant appellant, Harvey Gales. All right, thank you. And then we have Ms. Brooks for the people. All right, you may proceed, Ms. Ramani. There are two issues before this court. First, I'll be addressing the mistrial issue. I'll be primarily focusing on that, and then second, I will briefly be addressing the issue with regard to that side of evidence. The state admits that mid-trial, at tender discovery, the three most crucial witnesses in its case were paid in relation to this case, and this evidence undermines its case, but claims that this did not rise to the character or magnitude necessary to declare a mistrial. The state has cited no authority for this. Witness tampering, like the kind that occurred in this case, threatens the integrity of the trial process, of our criminal justice system, and hinders the administration of justice. The trial court abused its discretion in denying a motion for a mistrial. The only way to ensure that Herman Gales received a fair trial was to declare a mistrial. On Friday, defense counsel heard for the first time jail calls wherein two of the state's witnesses had admitted to receiving payoffs in this case, and also another woman had said that another witness had been paid in relation to this case as well. Do you disagree that the state appears to have disclosed this information just as soon as they were made aware of it?  And on Friday, defense counsel moved for a continuance, and he also moved for transcripts. Both of those motions were denied, and when the court denied those motions, the court stated, quote, we are going to finish this trial. Defense counsel later moved for a mistrial, and that motion was denied. The court found that the calls involved collateral matters and that they were unreliable conversations. To find that the calls involved collateral matters is contrary to Illinois law, because corruption and bias is always... Counsel, the judge himself indicated that maybe he was using the wrong terms when he was confronted about that issue of collateral matters, didn't he? Correct, he did. And even so... And ultimately, they did provide transcripts. Ultimately, yes, the court, or he did receive transcripts, but that was... On a Sunday morning. On Sunday morning at 10 o'clock, and that was after the motion for a mistrial had been denied. On Friday, after the motion for a mistrial was denied, the state rested. Defense counsel's motion for a directive verdict was denied, and then defense counsel again moved for a mistrial. And this time, he explained that it was necessary to learn what was on the disk, and who was speaking, and what happened. He explained to the judge that it was unfair to the defense, for the judge to know that this evidence existed, and that nothing could be done about it before the jury was confronted with it. Counsel, let's talk about the witnesses who indicated that they had accepted bribes, or that the evidence that was disclosed suggested that they had received bribes. I know this was a case where there was a melee at the mall, and a lot of confusion, and really only one person who allegedly saw your client stab the victim. Is that correct? Correct. And that was one of the people who we believe to be on the recording, indicating they had received some type of bribe. Is that Mr. Brown? Mr. Brown was not one of the people speaking on the call, but a woman whose name was known to the state had said that he had received a bribe not to come to court. That Mr. Brown had? Correct. And that she told the Sagamon County State's attorney this information, and that's why he was brought in by U.S. Marshals to court. And so the name of this woman, though, was not disclosed until Monday. On Monday, the state said that the transcripts were tended on Sunday, and on Monday the state said that the woman's name was Tanya Manning. But also on Monday, the transcripts were being edited to identify who the speakers were, because on the transcripts it said speaker one, speaker two, speaker three, and so forth. And so they were being edited on Monday, and the transcripts say that Tanya. And so this is another discrepancy. There's nothing that defense counsel could have done with this to be able to present this evidence on Monday. There's nothing he could have done to find out, to do any sort of investigation regarding what she had said about Cornelius Brown. And the weekend continuance was not enough time for anything to be done. And there's no cases really on point, and I think that's quite telling. But in State v. Smith, the court said that it is fundamentally important to the integrity of the administration of justice and critical to the very soul of the judicial system that trials be conducted without the possible taint, or the taint of possible witness tampering. And the declaration of a mistrial in that case afforded the time necessary to conduct an investigation that lifted that taint. And here, in this case, there was not enough time to do any sort of investigation, or even for defense counsel to be able to prepare his defense. On Monday, defense counsel had repeatedly stated that he wanted to present this evidence, but that he was unprepared to do so. And, you know, as I mentioned, the judge on Friday had made it abundantly clear that this case was going to proceed, and this case was going to be finished. And in addition to defense counsel not being able to prepare, defense counsel told the judge that he was at a disadvantage. And the judge agreed. And the court said that the State was at a disadvantage, and so was the court. And if everybody's at a disadvantage, how could this case proceed? In fact, the State made, as I mentioned, continuing disclosures on Monday that the transcripts were being edited to name the speakers and to accurately reflect what was said in the conversations, that they had also tended a receipt showing, corroborating that Tyrone Lee had put money on the books of Sean Jackson and a video showing that Tyrone Lee was walking into the bathroom with somebody named James Cooper. But James Cooper's name was also disclosed for the first time again on Monday. And in addition to that, there were over 10 hours of video that were from the courthouse and from the jail that were also tended to defense counsel that he never even had an opportunity to view. The State suggests that moving for continuance on Monday would have been futile. And that's exactly why a motion for a mistrial should have been denied, or should have been granted. And additionally, requesting another continuance on Monday would have also jeopardized the defendant's right to a fair trial. On Friday, when the judge called the jury back in to ask them if they could come back on Monday, he stated on the record that he was reluctantly getting head nods. And then the State had already rested on Friday. Any continuance that would have been, even had it been granted on Monday, the jury would have likely attributed any delay to the defendant because the State had already rested. And requesting a continuance could have also affected the jury's recall of the evidence that the State had already presented. And the State below initially, when it had objected to a continuance on Friday, even said that if there was a long continuance that the jury could base its decision on other things and not on the evidence. The only way to ensure that the defendant received a fair trial in this case is to grant a motion for a mistrial. The denial of a motion for a mistrial in this case denied the defendant his right to a fair trial, denied him his right to counsel, his right to present a defense, and his right to present a defense. This error was not harmless beyond a reasonable doubt. Counsel, just as an aside, I know this isn't really an issue today and is not a record, but is your client still in custody? No, he's not. He's been released? Correct. Is he on parole? Yes, he is. Moving to the second issue, Cornelius Brown made a statement to, well, with regard to the first issue, we asked that they reverse the name for any trial. Moving to the second issue, Cornelius Brown made a statement to Officer Peters that Herman Gales had stabbed Julian Randall. And as argued in the opening brief, this is not admissible as an excited utterance. The state does not contest this and is therefore forfeited any argument that it was. Instead, the state argues that Brown's statements were admissible as a prior statement of identification. The state is wrong. Absolutely no evidence was presented that any witness, let alone Brown, identified Gales from a lineup, a photo array, a composite sketch, at a show up or at a prior court hearing. Do you have a case that says that's required? All of the cases, I don't have a case that specifically says that. All of the cases, though, have included either statements that were made in the identification process that ultimately led to a pretrial identification. And in Cleary v. Graham, the purpose, as they've noted, the purpose of the rule permitting a prior statement of a subsequent observation prior to trial. Here, there was no subsequent confrontation, and so there was no prior identification. While a prior consistent statement of identification includes the identification process, that process ultimately leads to an identification based on seeing the defendant again. Counsel, would you agree that if there is no requirement of a prior identification, we can affirm if we find that the identification is appropriate if you don't have to have identified the person before? I mean, we can affirm based on anything that the record supports, right? You can affirm based on anything the record supports, but no, I don't think that it can be affirmed based on it being because the statement wasn't a prior statement of identification. It was just an accusation. He said he saw Herman Gales run up and stab him with a long black pocketknife. Brown is the identifier, and Brown relates that statement to Officer Peters, right? So when are we missing? So, for example, in Shum, the victim had said, told the police that Keith was the offender. She said that she didn't know his last name, but that her boyfriend who was in jail would know his last name. So the police then go to the jail and learn his last name. After learning that Keith's last name is Shum, the police locate Keith Shum, take him to the hospital where the victim is at, and she immediately identifies him as the offender. So her statement that that was Keith and that Keith was the offender was part of the identification process  So because in this case, the person who identified him prior to trial did it in one fell swoop and didn't need additional help or steps by police to effectuate the identification, that's why this one doesn't qualify? Well, this wasn't actually an identification. It's simply an accusation. What is it when he says, I saw such and such, and his name is this, and he stabbed him? What's not an identification? That's an accusation. Had that been verified? He said, I saw. It's not just that I heard that Herman Gales ran up and stabbed somebody. Under 115.12, there are three requirements. The statement is not rendered inadmissible by the hearsay rule if A, the declarant testifies at the trial and hearing, the declarant is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him. There's nothing in there that says, and is part of an identification process that involves a prior identification. Well, we're not saying that there has to be a formal identification process, that there has to be a lineup. It could have been at a pretrial hearing. It could have been at the grand jury. But where's that requirement? That's my question. Well, there is no case in Illinois that specifically says that. There is no case that has addressed that. So you must be the first? I do. I do. There is no case that specifically addresses that. What is it about, let's look at it then from an analytical standpoint. Recognizing what the basis is for this prior identification test. What is it about the fact that it's part of some identification process that you think creates more reliability in the statement? Because either one of them, they're still going to be subject to cross-examination, right? Well, yes, they'd both be subject to cross-examination. So when you get the prior identification as part of an identification process, then you're going to get the whole line of cross-examination about the suggestiveness of the process. So what you've done is you've actually complicated it more than simplified it. Well, Illinois courts have said that it includes the process. And so that there has to be that these statements, and it is to determine the reliability, but there's no way to determine the reliability here really because all it is is I saw this happen. And that's what... No, no, not I saw this happen. I saw him do it. And that's what he testified to in court. And the thing is... People get convicted on that testimony all the time. So then there really wasn't great probative value to it anyways. And the probative value in this case, I mean, the danger of unfair prejudice to the defendant significantly outweighed the probative value. How is that when both of the declarants are subject to cross-examination? Both are going to have to come in and testify. Officer Peters and Brown are both being subject to cross-examination. Well, they would be subject to cross-examination, but the thing is this case boiled down to a credibility contest. It was between Herman Gales saying, no, I didn't do it, and then the state's witnesses and Cornelius Brown who said, no, I saw him do this. So in this case, this isn't the typical case where somebody comes into court and identifies somebody previously and sees somebody previously and then comes in and says... This isn't the situation where the reliability of his testimony was compromised. How are you thinking of Cornelius Brown? Cornelius Brown, thank you. Cornelius Brown was familiar with Herman Gales. So the jury heard that. So really this isn't going to help the jury's determination of whether or not that's what he saw. An eyewitness to a crime is not helpful to a jury? No, I'm not saying that. His testimony that that's what he saw and that he knows Herman Gales, adding to the fact that he had said this earlier, isn't going to... It's not that relevant because... It's relevant and it's somewhat damning to your client. So I would state you don't even want to mess with it, I guess. I'm sorry? They don't want an eyewitness to testify. It just kind of complicates things. Well, no, no. The state should bring in their witnesses, but the thing is the jury... This is somebody who is familiar with Herman Gales. This is somebody who knows him and so... Which is one of the factors they specifically looked at in assessing the credibility of an eyewitness, right? Their knowledge of the person, experience. There's a jury instruction that speaks to that and lists several factors and that's one of them. Yeah, and so by presenting this evidence, all it does is... Hammer your client. It bolsters the state's evidence in a credibility contest. All of which is subject to cross-examination. My point is I understand what you're saying and I appreciate it. I'm trying to figure out, though, what is it about this prior identification process that you think somehow actually adds to it, and more importantly, is there an Illinois case that says that that factor is necessary before identification testimony can be admitted under 115.12? There isn't an Illinois case that specifically said that. For instance, in Temple, the witness saw the shooting and said that the defendant was a shooter and that he knew the defendant from the neighborhood. So this is somebody who knows the defendant. But he later identified him in a photo array and then in court saying that he was a shooter. So those are statements in the identification process where it actually leads to an identification and that there has to be some sort of confrontation afterward. Because otherwise it's just saying that somebody committed a crime, that I saw somebody commit a crime, that's still an accusation. But when there's verification of that, that yes, this is the person who I'm accusing, being able to point to that person again and say, this is the person who I'm accusing of committing the crime, based upon seeing him again. Even if it's in a newspaper, if it's in, like I said, a formal... I'm sorry, Ms. Romano, you're out of time, but you will have additional time on rebuttal if you desire. Okay, thank you. Thank you. Ms. Brooks? Thank you, Your Honors. Good morning. May it please the Court. My name is Allison Paige Brooks. I'm here on behalf of the people. The standard of review on the mistrial request is abuse of discretion. The defendant has to show that the denial of that essentially denied him a fair trial. The recordings here were relevant for impeachment. And the trial court, although calling it collateral, it seems like the trial court really meant that this was simply indirect, the meaning of collateral in the sense that this is not directly related to the question of whether the defendant was the person who stabbed the victim, Julian Randall. So in that sense, the judge was concerned about the time that it would take to hold the jury waiting. Ms. Brooks, let me ask you this. What impact do you think it would have had on the jury had they known that these witnesses accepted bribes or were paid to not come to court or paid to say certain things? The effect of a, for example, Cornelius Brown, if he was paid not to come to court, it could be relevant to his credibility, although in the sense that he's not being paid to identify the defendant and testify against him, he's being paid not to show up. He happens to be the only actual eyewitness. To the stabbing itself. Right. Although, of course, in a mass melee situation like this, I think the state could also prove its case through accountability principles. For example, people are involved in a mob action. Any person who participates in a mob action would be accountable for whoever stabbed the person. So, I mean, it seems like. We've got two gangs here, and I'm just thinking of your, you know, run-of-the-mill citizen. I would think that some serious suspicions, and as you indicated, serious credibility issues, would arise for the state if this type of evidence came in. Yes. As terms of witnesses being paid with respect to the case or the testimony, that does create credibility. Do you feel like the defendant was given an adequate opportunity to investigate the information that was being provided by the state over a period of time? The state's position is that the defense did have an adequate opportunity. The initial request for continuance was for the purposes of obtaining transcript. They got the transcript by 10 a.m. Sunday morning, which was the deadline. And then edits started happening Monday morning, and then the information on the identity of this woman happened Monday. So when, I mean. Video disks. Right. And so not only do you need time to get the information, but then you have to investigate it. You have to vet it and figure out what other steps you need to take to address it. Do you think there was enough time for all that? Well, there was enough time for the defense to introduce the transcript, or enough to transcript the actual tapes and provide a witness, for example, to authenticate them. Essentially what the defense wanted, I think, was to be able to go all the way down the road. And why shouldn't they be? If what you have is evidence that state's witnesses are being paid, why shouldn't they be given as much time as is necessary for them to investigate that? Well, because Judge Kavanaugh was concerned about how long the jury's already been waiting. Absolutely. But the jurors get to go home. That's true. The defendant is facing prison. A constantly concerned trial jury, there's no question. You're always worried about that jury sitting there waiting. Citizens are only getting paid a few bucks. As you should be. And that's perfectly appropriate. Right. But in this situation, you get 10 hours of tapes. He's given 15 minutes to review them at one point. The 10 hours of which tapes? I'm sorry, did Claire? I think Counsel was saying there was something totaling 10 hours. Is this the courthouse surveillance video or something? Probably a combination of all of them. I mean, because you had video and you had audio as well. Right. Isn't that correct? Well, essentially, the fact that these are tendered in discovery does not mean that these are necessary for the defendant to have a fair trial. I mean, the prosecutors could provide. I don't think you really mean that. Well, I mean, it's the Brady material. Prosecutors could. So it is required to be disclosed. No, the point is the prosecutors can comply with their Brady obligation. They could maintain an open file. They can provide everything, even if it is only marginally relevant. It's not necessarily constitutionally required to be disclosed,  And the prosecutor is going out of their way to exceed their Brady obligations in providing everything. The essential thing here was the allegations that witnesses were bribed. And those are contained in the initial jail recordings, which were received before the weekend. And the defense requests just time to get them transcribed, gets the transcriptions during the weekend, and then shows up Monday, gets the continuance also to the afternoon. Judge Kavanaugh says, present your case at 1 p.m. And the defense does not ask for more time, does not say why the defense believes that it's necessary to have more time. They had asked for mistrial. They had asked for mistrial earlier. Do you think it's pretty clear that the judge had no intentions of granting a continuance? It's obvious that the judge was reluctant to continue the case any further. This case is going to be finished. Yes. That doesn't sound like reluctance to me. Right. Extremely reluctant, yes. But if the defense had done something which it did not do, which is explain exactly what was necessary for a further continuance. Because they don't know yet. They've just gotten tapes which they can't really decipher. It goes to some group in California, apparently. That part I never did figure out. And what we get are a bunch of transcripts that say unintelligible, unintelligible, no identification whatsoever. Now we find out on Monday that there's a detective that's going to be going through these and editing them, telling us what they say. The defense still doesn't know what they say. But we know that the state says they've got somebody who's going through these tapes to identify the speaker and perhaps help identify what's being said. This is all ongoing. At the same time this is ongoing, and now they produce video which corroborates the fact that, yep, looks like people are getting paid. And when the defense is asked if they want to use some of this, they say, but I don't have the capability of stopping them where I want them to be able to play them to the jury. The disks which they were told, video disks by the way, which they were told may or may not work. The defense says, but Judge, I can't get them to, I don't have the capability to parse out the sections that I need. In other words, the defense was clearly in need of some technological assistance as well as just digging into the facts. But even if they had trouble with that, they should have known that before 1 p.m. on Monday. And there's no request for further continuance. As far as this record can be shown, it just appears the defense elected not to pursue that evidence after further consideration of the issue. Because there's no indication for the defense that they believe that further continuances were absolutely necessary and explained to Judge Kavanaugh exactly why he needed to keep the jury waiting longer. What do you think the comment meant when the defense counsel says, Judge, I can't believe that the jury is not going to be allowed to hear this? Well, he could have presented, he could have admitted these in evidence. If he was going to get some sort of witness to authenticate them, I'm sure it's somebody from the sheriffs or whatever. How does he do that? He had talked about having a witness to authenticate. How does he do that by 1 o'clock? Well, he had these tapes before the weekend. He could have obtained a witness. He's told by the state they've got somebody on Monday. Well, the point is the important part of it is the tapes themselves. And they could have been admitted into evidence. He could have argued to the jury about those tapes, the contents of the tapes, themselves are the evidence. And we start getting into jail recording, I'm sorry, courthouse video surveillance, that the only point of that would be to simply corroborate things that are in a recording. Which is kind of significant when you're claiming that the state's witness could have been brought. I mean, it seems like you really have no problem with really just cutting off the defendant's ability to prove his case at the meets. His case is he elected to proceed without the tapes. Well, I mean, I feel for counsel because how do you proceed when you feel like you're inadequately prepared, you don't really understand or know what's being said. Do you put your hands and take a risk that way? Or do you just go forward without it? Well, that was the defense's election. That was the situation the defense was put in. Right. And just because the defense is put in a difficult position doesn't mean that the counsel was ineffective in how he handled it or that it was such a bad situation that he was denied a fair trial and mistrial was necessary. I mean, if the defense and mistrials are not favored, if there is an alternative, the defense needs to request it. In other words, here he's going to be awarded with a mistrial in a case where he didn't even request the additional time and in doing so state the necessity for that additional time. When the judge was obviously extremely reluctant to hold the jury waiting five minutes after 1 p.m. on Monday after the case had already been contended over the weekend, the judge was reluctant to even continue it past Friday. He wanted it done that week, but he got it all the way over the weekend with the benefit of those tapes. And the fact that he... You're saying the defense counsel recognizing all this should have asked one more time for one more continuance so that he could hear the judge say, this trial is going to be finished. Well, if he at least makes the case to the judge exactly why continuance is necessary to preserve the defendant's right to a fair trial. We don't have that showing from the defense. Instead we have the defendant essentially on appeal complaining for the first time that a continuance was necessary to preserve the defendant's right to a fair trial when the defense counsel below should have done that to the judge and explained it. He's contending that a mistrial should have been granted. He's contending a mistrial should have been granted, but he's also complaining his counsel should have requested further time. But we don't understand what counsel's reasonings were. We don't even know from this record if the defendant just told his attorney, look, let's just get this trial over with. We don't know what happened. So to resolve this sort of on the first time on appeal with an inadequate record where there's no request for a further continuance to say, they say, okay, well this mistrial should be granted even when the defense counsel didn't even ask for more time, that's not an appropriate resolution. And then to say that on this record the, and I think counsel's question about whether he's still on MSR, for example, is relevant to whether this court can defer consideration to post-conviction because he still has standing to file post-conviction petition while he's on MSR. Did he raise it in a post-trial motion? Did he raise this on post-trial? I'm not sure. I think he might have. He did. Yeah, okay. The mistrial issue. Right. Okay, right. He did raise that in a post-trial motion. And the judge kind of seemed surprised that in light of all the accommodations that had been offered that this would be the argument. Well, right. He did have an opportunity at post-trial. Right. Whether you think it was adequately raised at trial or not, he did have the opportunity to address it post-trial and say, you know what, you're absolutely right. In the heat of all of what was going on there, I just didn't really put it together like maybe I should have and you're absolutely right, counsel. Maybe you shouldn't have the opportunity. Right. From Judge Kavanaugh's perspective, though, Judge Kavanaugh erred on every side to give the defense more time and more opportunity. And that's what Judge Kavanaugh's perspective from that moment. Absolutely. He was trying to protect the proceeding of the trial and he was trying to protect the rights of the defendant, but everyone was being confronted with an incredibly unique set of facts. I don't think I've ever even seen anything like this before. And that's with 25 years of practice and 17 years on the bench. I don't think I've ever seen a case where you had actual testimony, tapes of people, state's witnesses talking about being paid, and then corroboration with videos and apparently some records as well. Money being put on books. Right. I've never seen that. So, you know, the judge, you have to be sympathetic to the judge. He's being confronted with a set of facts that few of us have ever even seen. In the midst of what was already a obviously very confusing and very difficult trial, as trials are when you've got two gangs fighting, especially in some place like a mall. And it was obvious from the record that there were some real issues with how the case proceeded at times. And it sounded to me, honestly, like there were probably a lot of people in the gallery, there was a case that garnered a lot of attention because there were some concerns about things that defense counsel did that kind of incited some of the people in the courtroom. So there's no question that everybody was under a lot of pressure. But when given the opportunity post-trial, the court could have addressed that, right? I mean, as attorneys, we've all had it hammered into us, the importance of the defendant being able to test the credibility of the state's witnesses. And I can just envision the headline. Let's say someone is convicted and then the headline is, you know, evidence arises that this person was bribed or this person took money to testify. It would be so shocking and alarming. And to prevent the defendant from presenting that evidence that just really blew up the state's case, which was shaky other than on the accountability, as you mentioned, it's very troubling. Well, if multiple witnesses identify the defendant as being involved in the melee, did we have that here? Multiple witnesses of being involved? No, identifying him being involved. As being present? You started with involved, now you're saying present. Okay, well, I'm not sure exactly which people were identified. I saw Herman Gales stabbed. Oh, just stabbing. Okay, if you're talking about accountability. I was trying to talk about accountability. I'm saying it's which witnesses identified him as being in the group that was involved in the melee is my point. How many identified him as stabbing? As stabbing Julian Randall? It was one. But the video corroborates. Would he now have evidence of being paid not to appear? But, see, he's also got the prior consistent statement, which would rehabilitate his credibility. And there's also the video, which would show the defendant's presence seen as part of the group that was involved in the melee. So to think that he would not be convicted by accountability for being involved in the group perpetrating mob action. Is he shown on the video engaging? And as Justice DeArmond points out, we're not here on the accountability issue, but just for the sake of discussion. Is he shown on the video actually engaging in the melee? I don't remember exactly which is on the video. I'm not sure the answer to that question, Your Honor. But essentially it would be. More importantly, doesn't the defense have an adequate opportunity to investigate him? Maybe it goes nowhere. Maybe they get nothing out of this. But that's really not the issue. The issue isn't what the ultimate outcome. The issue is what effect did this have on the propriety of the process? Well, it is relevant for the purposes of this question of prejudice. He's alleging ineffective assistance of counsel for not furthering his investigation by not, for not requesting a continuous for the purposes of further investigating this issue of the payoffs. That is the complaint. There has to be prejudice established, which means that further investigation would have resulted in information that would have led to the jury finding reasonable doubt of guilt. There has to be some sort of showing of prejudice that further investigation would have led to something productive for him to win on this ineffective assistance of counsel claim. And when we're talking about corroboration of impeachment, it is getting very far afield of the question of who stabbed the victim and whether the defendant was involved in the melee. That would have made him accountable for the person who stabbed the victim. So it seems like the trial court is sensitive to keeping the jury waiting. And without an affirmative description of exactly how much time he needed on Monday and what else he needed to do and why and how that was important to convince the judge, who is extremely reluctant to continue, it seems like that would be not appropriate to reverse this on the grounds of the abuse of discretion of the mistrial request that was made on Friday when he was just asking for a transcript. And I understand more things come about, but it doesn't. It's just even more tangential to the question of the payoffs, which are referenced in the recording. He didn't ask again on Monday? For further continuance? No, for mistrial. I don't remember if he asked for another. He might have, though. Very briefly with respect to the statement of identification issue, there's some case I relied on, and it says here that Conway had previously testified as to her identification of her attacker as Keith and as to identification of the defendant as Keith. So when you have, like, her going to the hospital and see that person say, yeah, Keith, this person here is Keith, that's a different identification from when she tells the police that her attacker was named Keith. So there's two identifications there, two statements of identification, both of which are admissible. And the fact here that there is only one statement of identification, that the person who's stabbed is named Herman Gales, that's still a statement of identification under SHUM. And it's still properly admitted as corroboration. And under SHUM, it says the fundamental basis for excluding such a statement as to your say, the lack of an opportunity for cross-examination is absent. It was absent here, and therefore, there was no basis to exclude that to your say. Any rebuttal, Ms. Romani? I'd just like to make a few points. The video does not show the stabbing. That was one of the questions that was asked to counsel, if there was anything. Does it show your client engaging in fisticuffs or any type of confrontation with the other group? There's a video showing, the video shows Herman Gales, Tyrone Lee, and Cornelius Brown, and they're kind of facing off with each other. But it doesn't show that, it doesn't actually show the stabbing. Could you walk us through what defense counsel did as far as requests for mistrials and or continuances? Yes, on Friday, defense counsel asked for a move for a continuance, and also asked that the state be ordered to prepare transcripts. Both of those motions were denied. Afterward, the defense counsel moved for a mistrial. And when was that? That was on Friday as well, and then that was denied. Then the trial proceeded. The jury came back in. The judge took judicial notice of a blue back, read portions of it to the jury. The state rested. Defense counsel's motion for a directive verdict was denied, and then defense counsel again moved for a mistrial. And then he said that if the court insisted that the trial proceed, that he at least be given until 1.30. The court said that he will give him until 1.00. And then when they come back after that break, he again moved for a continuance and asked for transcripts. And then the court spent the remainder of Friday addressing another issue regarding a juror, which really isn't relevant to this appeal. So they spent the rest of that afternoon doing that. And the judge released the jury for the weekend and had then ordered the state to get transcripts. He did not move for a continuance or a mistrial on Monday, but it was clear based on the comments of the judge on Friday with regard to the jury waiting, saying that we're going to finish this trial, that he was going to have to proceed with the rest of the trial. The state, and to clarify, there was 50 minutes of audio recordings from the jail calls. They're on Monday after defense counsel repeatedly said that he was not prepared and that after there was a break, the video was shown in court of them walking into the bathroom. And the receipt was disclosed at that time. And then I believe that there was another short recess, and then the state comes back again and says that there's 10 hours of video, or it says that there's this video that they're cutting down into two-hour increments, and this was the 10 hours of video. And actually, if you look at the videos, it shows Tyrone Lee in the exact same clothes that he was when he was testifying, putting money on the books of Sean Jackson. And it shows, I mean, there was nothing defense counsel could have done with this. And the state argues that this is relevant for impeachment. But in order to do that, defense counsel had to be prepared that if the witnesses got up there and denied that, that he had to have extrinsic evidence to be able to back up that impeachment. He had absolutely no time to be able to prepare his defense and to present this defense. And with regard to the record, this court has everything it needs for it to make a determination of whether the denial of a motion for a mistrial was an abuse of discretion. And with regard to the first and second issues, we would ask the court to please reverse the ruling. Thank you. Thank you. Thank you very much, Ms. Romani and Ms. Brooks. We'll take this matter under advisement and be in recess.